IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BIANCA D. BROOKS,            )
                             )
         Plaintiff,          )
                             )
v.                           )    Civil Action No. 3:16cv130–HEH
                             )
SPRINGSTED INCORPORATED,     )
                             )
         Defendant.          )

MEMORANDUM OPINION
(Motion to Dismiss)

THIS MATTER is before the Court on Defendant Springsted Incorporated's ("Defendant") Motion to Dismiss, filed on April 8, 2016 (ECF No. 4). Defendant seeks to dismiss Plaintiff Bianca Brooks's ("Plaintiff") claims pursuant to Title VII of the Civil Rights Act of 1964, arguing that this Court lacks subject matter jurisdiction over Plaintiff's Complaint. For the reasons set forth below, the Court will grant in part and deny in part Defendant's Motion to Dismiss.

I.    **Background**

On a motion to dismiss, the Court takes the well-pleaded allegations as true and views them in light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Accordingly, the Court finds as follows:

Plaintiff, an African-American female, began working for Defendant as an Administrative Assistant on a temporary basis on November 15, 2012. (Compl. ¶¶ 6–7,

ECF No. 1.) On April 1, 2013, Plaintiff became a full-time, permanent employee. (*Id.* ¶ 8.) She served as one of two Administrative Assistants in Defendant's Richmond office. (*Id.* ¶ 9.) "Jama," the other Administrative Assistant, is white. (*Id.*)

On April 29, 2013, Defendant hired Sheryl Dallas ("Dallas") to supervise Plaintiff and Jama. (*Id.* ¶ 10.) Dallas performed her supervision while stationed in Defendant's Georgia office. (*Id.*) Plaintiff contends she performed her job well and never experienced any formal discipline until Dallas began supervising Plaintiff. (*Id.* ¶ 11.) According to Plaintiff, Dallas "struck up a friendship with Jama and repeatedly showed favoritism toward her over Plaintiff." (*Id.*)

Although both Plaintiff and Jama served as Administrative Assistants and had the same responsibilities, Dallas "repeatedly demanded" that Plaintiff "perform all tasks that her white counterpart, Jama[,] refused to or could not perform." (*Id.* ¶ 12.) Plaintiff expressed frustration that Jama could not perform certain basic tasks. (*Id.* ¶ 13.) Plaintiff pleads that Dallas took Plaintiff's expression of frustration as a challenge to Dallas's authority. (*Id.*) According to Plaintiff, Dallas "further increased her . . . favoritism towards Jama." (*Id.*)

In addition to performing Jama's tasks, Plaintiff claims that Defendant routinely required her to perform tasks associated with the "Analyst" position—a position above that of Administrative Assistant. (*Id.* ¶ 14.) Plaintiff pleads that in January 2015, Defendant rated Plaintiff and billed out her work at the Administrative Assistant level, even though Plaintiff performed Analyst tasks. (*Id.* ¶ 15.) According to Plaintiff, Analyst tasks commanded a higher billing rate than Administrative Assistant tasks. (*Id.*)

Plaintiff pleads that she was tasked with "more responsibilities and harder projects" than Jama. (*Id.* ¶ 16.) Although Dallas "chastised Plaintiff for wearing earphones during the work day," Dallas never disciplined Jama for doing so. (*Id.*) Plaintiff pleads that she never had the opportunity to work overtime while Jama "was given all overtime opportunities." (*Id.* ¶ 17) Plaintiff alleges Dallas also communicated that Plaintiff's dress "such as wearing boots and scarves—was too ethnic for the workplace." (*Id.* ¶ 16.)

Plaintiff purportedly expressed her "consternation and frustration" about the favoritism afforded to Jama over the next several months. (*Id.* ¶ 18.) At one point, Plaintiff "expressly called out Dallas's favoritism toward . . . Jama." (*Id.*) After that incident, Plaintiff was terminated on January 9, 2015. (*Id.*)

Plaintiff's Complaint contains a single count of racial discrimination in contravention of Title VII. (*Id.* ¶¶ 19–24.) Defendant now asks this Court to dismiss her Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Def.'s Mem. Supp. Mot. Dismiss Pl.'s Compl. ("Def.'s Mem.") 7, ECF No. 5.)

## II. Standard of Review

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's jurisdiction over the subject matter of the complaint. In the context of a Title VII claim, failure to exhaust administrative remedies deprives a federal court of subject matter jurisdiction. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

3

## III. Analysis

Defendant contends Plaintiff has failed to exhaust her administrative remedies regarding the allegations contained within her Complaint. Specifically, Defendant avers Plaintiff's Complaint contains allegations well-outside of the scope of her administrative charge, and, therefore, this Court lacks subject matter jurisdiction over those claims. (Def.'s Mem. 5–7.) Accordingly, Defendant asks this Court to dismiss Plaintiff's Complaint in its entirety. (*Id.* at 7.) In the alternative, Defendant asks this Court to strike the portions of Plaintiff's Complaint alleging that Plaintiff was asked to perform Analyst position tasks, that Dallas disparaged Plaintiff's style of dress, and that Plaintiff was terminated after confronting the alleged favoritism. (*Id.*) Although lean on analysis, Plaintiff responds that each of the contentions raised in her Complaint reasonably relates to the allegations in her original administrative charge, and, therefore, this Court may properly exercise subject matter jurisdiction over her entire Complaint. (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss 5, ECF No. 6.)

Before a Plaintiff may file suit pursuant to Title VII, she must file an administrative charge with the EEOC. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). "This charge frames the scope of future litigation." *Id.* During a subsequent lawsuit in federal court, a plaintiff may pursue "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). "[A] plaintiff fails to exhaust h[er] administrative remedies where . . . h[er] administrative charge[]

4

reference[s] different time frames, actors, and discriminatory conduct than the central factual allegations in h[er] formal suit." *Id.*

In her administrative charge, Plaintiff indicates that she had experienced racial discrimination, that it was a continuing action, and that the latest occurrence happened on December 12, 2014. (Def.'s Mem., Ex. A., Administrative Charge 1.)[1] She complained that in December 2013, the other Administrative Assistant, who was white, sent Plaintiff an email requesting Plaintiff assist in the performance of the other Administrative Assistant's responsibilities. (*Id.*) Plaintiff declined, indicating she was preoccupied with her own work. (*Id.*) In response, the senior vice president, John Anzivino, came into Plaintiff's office, yelled at her, and stormed out of the office, slamming the door. (*Id.*)

In May 2014, Plaintiff received an evaluation criticizing her overall performance from Rick Yount, Director of Communications/Support Services. (*Id.* at 1–2.) In September 2014, Dallas issued Plaintiff a Letter of Reprimand, criticizing Plaintiff's conduct and performance. (*Id.* at 2.) Plaintiff indicated that on December 12, 2014, Dallas informed Plaintiff that her earbuds, her boots, and her hat were not permitted at work. (*Id.*)

---

[1] A court may consider a document attached to a motion to dismiss where a plaintiff explicitly relies on the document in her complaint and she does not challenge the document's authenticity. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Plaintiff pleads that she timely filed an administrative charge with the Equal Employment Opportunity Commission on December 22, 2014, before receiving a right-to-sue letter and commencing suit in this Court. (Compl. ¶¶ 4–5.) The Administrative Charge provided by Defendant bares the date December 22, 2014. (Administrative Charge 2.) Additionally, Plaintiff does not challenge the document's authenticity in her response to Defendant's Motion to Dismiss. Accordingly, the Court appropriately relies upon the Administrative Charge in disposing of Defendant's Motion.

5

Plaintiff concluded that her supervisors monitored her performance and conduct "constantly and excessively." (*Id.*) Plaintiff stated the other Administrative Assistant was treated more leniently, given opportunities to work overtime, and given fewer responsibilities. (*Id.*) As a result, Plaintiff felt discriminated against and filed her Administrative Charge. (*Id.*)

Defendant first requests this Court dismiss the Complaint in its entirety, arguing generally that Plaintiff failed completely to exhaust her administrative remedies. (Def.'s Mem. 7.) The Administrative Charge, however, does address certain contentions contained within the Complaint. For example, both assert Dallas warned Plaintiff about wearing earbuds but never chastised Jama about doing so. (Compl. ¶ 16; Administrative Charge 2.) Additionally, each contends Jama received all the opportunities to work overtime while Defendant never did. (Compl. ¶ 17; Administrative Charge 2.) Accordingly, the Court will deny Defendant's Motion to Dismiss to the extent it seeks to dismiss the entirety of Plaintiff's Complaint.

In the alternative, Defendant asks this Court to strike certain portions of Plaintiff's Complaint. (Def.'s Mem. 7.) First, Defendant seeks to strike Plaintiff's allegations related to the contention that Plaintiff performed Analyst duties. Her Administrative Charge contends that Jama was given fewer responsibilities than Plaintiff and that Jama requested Plaintiff assist Jama with her responsibilities. (Administrative Charge 1–2.) Although John Anzivino, a senior vice president at the company, allegedly yelled at Plaintiff and slammed the door in the wake of Plaintiff's refusal to perform Jama's work, the Administrative Charge makes no reference to Plaintiff performing work other than

6

her own—much less that of an Analyst. Accordingly, because the allegations of the Administrative Charge and the Complaint do not reference the same actors and conduct in this regard, the Court cannot say that the allegations reasonably relate to each other or would have been developed during a reasonable investigation. *See Chacko*, 429 F.3d at 506. Accordingly, the Court will strike those allegations from the Complaint.

Next, Defendant asserts the Administrative Charge "does not set forth any allegations concerning [Plaintiff's] . . . dress." (Def.'s Mem. 6.) Contrary to Defendant's contention, the plain language of the Administrative Charge, which Defendant provided, states Dallas "informed [Plaintiff] that . . . [her] boots and hat were not permitted at work." (Administrative Charge 2.) Plaintiff alleged discrimination related to her dress in her initial charge. Even if the Administrative Charge had not squarely addressed Plaintiff's dress, the allegation in the Complaint that Dallas informed Plaintiff her dress—"such as wearing boots"—was "too ethnic for work" would reasonably relate or would have been developed by a reasonable investigation because both the Complaint and the Administrative Charge reference Dallas commenting on Plaintiff's dress. Accordingly, the Court will decline to strike those portions of Plaintiff's Complaint.

Finally, Defendant asks this Court to strike allegations related to Plaintiff's termination. (Def.'s Mem. 7.) Although Plaintiff alleges ongoing discrimination in her Administrative Charge, the facts provided generally relate to Plaintiff's contentions that her white counterpart was treated differently and that she received unjustified negative reviews from supervisors. (Administrative Charge 1-2.) The Complaint alleges that Defendant fired Plaintiff after Plaintiff "called out" the favoritism afforded to Jama.

(Compl. ¶ 24.) The Administrative Charge neither mentions Plaintiff's termination nor indicates that it occurred during the relevant time period. The Administrative Charge, therefore, references different time frames and different conduct compared to the Complaint. Accordingly, the Court will strike those allegations from Plaintiff's Complaint.

### IV. Conclusion

For the reasons set forth above, the Court will grant in part and deny in part Defendant's Motion to Dismiss (ECF No. 4). The Court will grant Defendant's Motion to the extent it seeks to strike from the Complaint allegations related to Plaintiff's alleged performance of Analyst tasks and Plaintiff's termination. The Court denies the remainder of the Motion.

An appropriate Order shall issue.

It is so ORDERED.

/s/
Henry E. Hudson
United States District Judge

Date: May 3, 2016
Richmond, Virginia

8